(Decided Sept. 20th, 1861.)

---

# The Baltimore United Fire Department *vs.* Thomas Creamer and others.

By the Act of 1833, ch. 187, the association of delegates chosen by the several fire companies of the city of Baltimore, and their successors, chosen annually, were incorporated by the name of the Baltimore United Fire Department, with power, by subscription, contributions, and other lawful means, to provide and create a fund, and invest the same in such manner as they may deem most safe and productive, the nett proceeds of which shall be applicable to the relief of disabled firemen, members of fire companies in association with said department, and their families. Under this Act $12,000 was invested in Baltimore city stock, which, by an ordinance of that city, was made irredeemable and not transferable. By a supplement to the charter, (Act of 1839, ch. 265,) power was given "to invest permanently, from time to time," in city or other securities, "such part of the nett proceeds arising annually from the city stock, or any other resources held by the institution, as may not be required for the relief of disabled firemen." A considerable surplus was so invested, and, in 1860, a *resolution* was passed by the corporation to sell and dispose of the *available* stock of the department, and to *divide* the proceeds, together with the cash on hand, equally among the fire companies composing the department. Upon a bill filed by three persons, two of whom were *delegates* from, and the other a *member* of, fire companies in association with said department, for an injunction to restrain execution of this resolution; HELD:

1st. That the complainants had a proper standing in court to file this bill,

Baltimore United Fire Department *vs.* Creamer, *et al.*

not only because they may be regarded as co-trustees of the fund, but also because, as corporators and members of fire companies in immediate connection with the said department, they are directly or remotely interested in the permanent investment and preservation of the fund, according to the intent and purpose of the charter and its supplement, and this resolution of the department would be in derogation of their rights.

2nd. That the said corporation has power to *sell, transfer* or *alter the investment* of the surplus fund available in its hands beyond the $12,000, but not to *distribute* the same in the manner as proposed by this resolution.

3rd. The said department was created a corporation for specified purposes, which they cannot infringe, whatever may be their altered condition, so long as they are in actual legal existence.

4th. So long as the department and the fire companies in association therewith, retain their chartered rights, the department, as trustees of these funds, must confine their action upon them strictly within the purview of the Act of incorporation, and its supplements; if they desire to effect any *division* of these funds, they must attain their purpose by some enabling statute.

APPEAL from the Circuit Court for Baltimore City.

The bill in this case was filed on the 14th of September 1860, by the appellees against the appellant. The complainants, three in number, aver that they are members of the Baltimore United Fire Department, and in association therewith, being respectively members of the Vigilant and First Baltimore Hose Fire Companies, and two of them delegates therefrom to the Baltimore United Fire Department.

The bill avers the organization and incorporation of said department under the Act of 1833, ch. 187, and states that amongst other objects of said department, as set forth in the Act of incorporation, was one for the creation of a fund to be applicable to the benevolent purpose of affording relief and assistance, comfort and support to the members of fire companies in association with said department, whose health or persons shall have sustained any injury in assisting at a fire, or in performing any duties as firemen, or in giving support and relief to the families of such members as should unfortunately be deprived of life, or rendered incapable or less capable of laboring for their support, by attending to their duties as such firemen. The bill then states that by soliciting donations from private individuals, banking and insurance com-

Baltimore United Fire Department *vs.* Creamer, *et al.*

panies, by means of a ball, &c., a capital was raised amount-
ing in the aggregate to $11,168.33, and that from the interest
arising thereon, the beneficial features of the department were
to be carried out and promoted; that $11,000 were invested
in five *per cent.* stock of the city of Baltimore, which stock,
under the ordinance of that city, of the 15th of April 1835,
is irredeemable and not transferable; that the interest from
said investment, in addition to revenue arising from other
sources, realized a greater sum than was necessary to carry
out the humane and benevolent designs for which the depart-
ment was created, and, by a supplement to its charter, (Act
of 1839, ch. 265,) power was given to invest *permanently*
the nett proceeds arising annually from Baltimore city stock,
or any other resources held by said department, and that from
time to time the surplus was invested, and that the capital of
the department now amounts to $17,588.18, composed of
various State and city stocks, cash, &c.

The bill then charges, that at a recent meeting of the dele-
gates representing the various fire companies composing said
department, a resolution was adopted authorizing the trea-
surer to sell the State and city securities held and owned by
the department, and the complainants deny the power of said
department to sell or dispose of any of the securities which
now constitutes its capital, so long as its charter, supplement,
or said ordinance of the city of Baltimore remain in force and
unrepealed. They also charge that there are disabled fire-
men, and families, and widows of deceased firemen, now
receiving, and who are entitled to receive, aid and assistance
from said department, and that the same constitute a charge
upon said fund. The bill also charges that the officers of the
department, in virtue of said resolution, are about to sell said
securities for the purpose of division amongst the various fire
companies, and prays for an injunction to prohibit such
sale.

The Acts of 1833, ch. 187, and 1839, ch. 269, and the
ordinance of the 15th of April 1835, and all other ordinances
of said city, relating to said department, are prayed to be
taken as parts of the bill. The resolution impeached by the

bill, and filed as an exhibit with it, directs the treasurer of the department to sell and dispose of the *available* stock of the department, and to divide the proceeds, together with the cash in hand, equally among the companies composing the department.

The injunction was issued restraining the department, its officers and agents from selling or disposing of, or changing or altering any stock or securities belonging to the department, or dividing said securities or any money arising therefrom, or any money now in the treasury thereof, of the beneficial fund, among the various fire companies composing said department, or among the members thereof.

The answer of the department admits it possesses capital as alleged in the bill, and states that no part of it was derived from the bounty of the State, nor from the Mayor & City Council of Baltimore. It states that $12,000 of its capital is invested in five *per cent.* city stock, under the ordinance of 15th of April 1835, and alleges that the certificates for that stock, on their face, show that they are irredeemable and not transferable, and the answer denies that the department ever attempted or proposed to sell *that* stock; that besides this investment, the department held $1000 of five per cent. State stock, and $3955.12 of six per cent. city stock, which it insists are wholly free from the claims of disabled firemen. And as to *these* investments, the answer insists that, as owner, it had the clear right of selling and disposing of the same, and that as to $12,000 invested as aforesaid, although there is no definite allegation in the bill that there is any subsisting charge on the interest accruing therefrom, yet the answer admits there is a charge thereon of $60 per annum, in favor of Mrs. Buckley and her children, but that there is no other charge whatever on the principal or interest of said investment, and that there are no persons who can possibly hereafter have any charge thereon, as the several fire companies composing said department have been superseded by the paid Fire Department now existing in the city of Baltimore, under the ordinance of the 10th of December 1858. The answer further insists that the bill is a pragmatic proceeding on the

part of the complainants, and that they have no title or interest to maintain the suit, and prays that the injunction may be dissolved.

On hearing of the motion to dissolve, the court (KREBS, J.) delivered the following opinion:

"I am of opinion that the complainants, members of the United Fire Department, may be properly regarded as co-trustees of the fund referred to in these proceedings, and, as such, may come into court and ask its aid, by injunction or otherwise, to prevent its diversion from the purposes of the trust for which it has been invested. *Hill on Trustees,* 458. 6 *Price,* 261, *In re Chertsey Market.* 1 *Ves., Jr.,* 297, *Powlet vs. Herbert.* 3 *Ves.,* 75, *Franco vs. Franco.*

"I am further of opinion that the nett proceeds arising from the fund referred to in the proceedings, set apart for the trusts and benevolent purposes specified in the bill of complaint, and which have been permanently invested by the said fire department, in pursuance of the provisions of the Act of Assembly of 1839, ch. 265, are subject to the same trusts, and applicable to the same benevolent purposes, as the said principal fund, and that the said department has no power or right to dispose of them, and distribute the proceeds in the manner in which the said bill alleges it designs to do. For these reasons I must pass an order making the injunction heretofore issued perpetual."

The defendant appealed from the order granting the injunction, and also from the order refusing to dissolve the injunction and making the same perpetual.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*Wm. Schley,* for the appellant:

It is undoubtedly true that a corporation, created for a particular purpose, can be restrained from doing acts which are *ultra vires.* This may be done, in some cases, by bill in equity, at the instance of a mere stockholder, who has an individual personal right, *as being a stockholder,* in the funds

and property of the corporation; in other instances, by information at the relation of parties interested; and, in other instances, by *quo warranto* or *mandamus.*

1. The precise question *first* to be decided in this case, is, whether the appellees have such an interest in the property of this corporation (proposed to be sold and distributed) as *entitles them* to ask for an injunction? Now it is very clear that there is an essential difference between the condition of being a mere *corporator,* and being a *shareholder* in a corporation, whose capital is divided into shares, the owners of which, *as shareholders,* would have a vested interest in the capital stock. In the case of this corporation, there is no *capital stock*—no *shares*—no *shareholders.* The *property* of the corporation belongs to the corporation, and the corporators, *as such,* have no rights of property therein. Cases, therefore, which are based on the theory of vested rights of property in corporators in the capital stock of the corporation, have no possible application to this case.

It is very true that, by the Act of 1833, the corporation is empowered, "by subscription, periodical contribution, or other lawful means, to authorize and provide for the creation of a fund, and the investments of the same," &c., &c. Now it is noticeable that the *power* is conferred on the convention of delegates—*the corporation itself*—to establish the fund. If it be considered to be a charity, then the corporation itself is the sole founder of that charity. The Act does not clog the *property* of the corporation with trusts; it only empowers the corporation to set apart "*a fund,*" (and of the amount of which the corporation must, necessarily, be the sole judge,) and that fund, by the act of the corporation, has been dedicated to the extent of $12,000; which investment the corporation has not proposed to disturb, and possibly may not have the *legal* power to disturb, under the peculiar terms of the ordinance referred to in the bill. At all events, it is not embodied in the resolution, as exhibited in the bill, and, therefore, as to that fund, there is no danger of irreparable loss; and even if, as to the other property, there was any ground of complaint on the part of the appellees, surely as to *this* in-

vestment there can be none. And an injunction is never to be issued or continued on the suggestion that it does no harm, and that no one is thereby hurt; but it must stand on the solid ground of necessity, in the administration of preventive justice. Besides this sufficient reason, the complainants do not show that they are disabled firemen, or members of the family of any disabled firemen, or that there is an insufficiency of security for those who have an interest in the provided eleemosynary fund, and that they are under any liability to assessment, to make up any apprehended or possible insufficiency.

Nor have the complainants any interest—any *vested proprietary interest*—in the other property of the corporation. If the corporation acts, it must, of course, be subject to the rules which apply to all other corporations; that is to say, it must act in meetings duly convened upon notice given, agreeably to the by-laws. But when duly assembled, the will of the majority, duly expressed, must govern, unless the act be *ultra vires*. But even if the sale of such other stocks, for distribution amongst the fire companies, be *ultra vires*, have these complainants, or any of them, either as firemen or as delegates from fire companies, (and one is merely a fireman and not a delegate,) any such *interest* as will enable them, or any of them, to pray for an injunction? Whether the select body, the first named delegates from the various fire companies, could maintain a bill, it is not necessary to enquire; whether the appellant, in its corporate capacity, could maintain such a bill against the officers, or any officer of the corporation about to act upon the resolution, it is equally unnecessary to enquire; nor is it necessary to enquire whether an information would lie, or a *mandamus*. The actual case under consideration, is a bill in equity, preferred by three persons, who are respectively firemen, and of whom *two* are delegates; and the question is, have they, *as such*, a right to maintain this bill? The notion that the appellees are *co-trustees* with the appellant, is wholly irreconcilable with the actual facts. The appellant is *a corporation* owner of its property, and the appellees are, two of them, corporators,

having no *interest* in the property of the corporation, no-*charge* upon it, and *only* entitled to vote in the corporate-meetings, and bound, as all other corporators are bound, by the decision of the majority. Even if they could promote, as relators, an information or some other proceeding, it seems to me that they cannot possibly have such an interest as will enable them to sue in their own names, and on the foundation of their own title. If this view be correct, the bill should be dismissed, with costs.

2. But even if the complainants have title to sue, where is the necessity, for the protection of an injunction?

They do not claim in the character of *cestui que trusts*, even if the corporation can be considered *as a trustee*. I am not prepared to concede that this relation really exists. As to the $12,000, it may be that it is a case of irrevocable dedication; but I do not even concede this. To the extent of actual charges upon it, and in favor of persons *prima facie* entitled to have a charge declared, it may be *irrevocable;* but *ultra* any vested right or charge, it is the property of the corporation, and may be validly recalled, saving the rights of all persons having actual charges thereon, or equitably entitled to such charge. The only impediment arises from the terms of the investment—the stock being not merely irredeemable, but not *transferable*. But for this, with the assent of persons having, legally or equitably, charges thereon, I can see no reason for questioning the power of the corporation, by a formal resolution of the corporation, duly passed, to revoke this dedication. It is not a case of *contract*, except as to persons who have charges duly acquired. It is, as to all other persons, the property of the corporation, and disposable by the corporation in the same manner as its other property.

And what valid objection can there be to the exercise of the ordinary power of an owner by *this* corporation, except as to the necessity of a proper saving of acquired rights? Hence, what objection can there be to the disposition of its property, other than the $12,000, even by distribution amongst the several fire companies represented in the department?

It is said that the funds applied in making these investments accrued from interest on the said investment of $12,000. This is not so, in point of fact, nor does the bill so allege. The bill, on this behalf, states that the funds accrued from interest on this investment, and *other resources.* Even, therefore, if the point were rightly taken, that the interest was irrevocably appropriated for payment of charges in exoneration of the principal fund, it would not affect the question as to the investment of funds derived from *other* resources. But the interest on the investment belonging to the corporation, notwithstanding the dedication of the fund for payment of charges that might be made thereon, and *subject to* the satisfaction of charges made, or to be made, was liable to disposition thereof by the corporation, in like manner as its other property. And, when the Act of 1839 was passed, such interest "not required for the relief of disabled firemen," was liberated from the effect of the unrestricted dedication supposed to have been previously made.

In the opinion of the learned judge below, the word "permanently," found in the Act of 1839, ch. 265, was construed to mean all the same as if the expression had been, "to invest for the benevolent purposes of affording relief and assistance," &c., as in the Act of 1833, ch. 187, sec. 4. And this construction was adopted, because the ordinance used the word "permanently" in connection with the investment thereby provided for.

But when it is recollected that it might very well be doubted whether the interest, which had accrued from the investment made under the Act, was not impressed with the character and quality of irrevocable dedication to the use of disabled firemen, their families, &c., (even if deemed *unnecessary* for their relief,) the true meaning of the word *permanently,* is ascertained. It was intended to be used and understood as an investment to be made, permanently *withdrawn* and exonerated from the previous dedication. The board of select delegates were invested with authority to act in the premises, and *so much* of the accrued interest as *they* should not consider as required for the relief of disabled firemen, was to be

invested, together with means derived from other resources, *with the consent of the United Fire Department;* not *temporarily,* liable to be recalled for the use of disabled firemen, but *permanently;* that is to say, forever liberated from the antecedently existing dedication, and to be deemed thereafter as parcel of the ordinary property of the corporation. And this construction is made certain by the provision, that what was thus to be invested, so far as the same accrued from interest, was to be so much of said interest as was not required for the relief of disabled firemen. And as the *power* to invest was conferred on the board of select delegates, to be exercised with the permission of the department, it follows that the *judgment* of the board of select delegates, acquiesced in by the department, was final and conclusive upon all the world, except those, if any such there were, who had acquired vested rights in said income. It is not alleged that there were then, or are now, any such persons. For these reasons there is no just ground on the part of any one, and certainly not on the part of the appellees, to complain of the proposed sale of this stock, and of the distribution of the proceeds amongst its several fire companies.

And what possible objection can there be to the distribution of any *surplus* fund, by this corporation, amongst the several fire companies? If such distribution would render the fire companies *unable* to do duty as fire companies, if the corporation, the Baltimore United Fire Department, could not exist or act without the retention of this surplus fund, it might be a case of misappropriation.

But the corporation would equally exist if it had not, *and had never had,* a single dollar.

As respects the creation of a fund for the relief of disabled firemen, it may be safely asserted that the Act is not *mandatory.* It conferred *the authority,* but did not make it an *imperative duty,* to establish such a fund, much less was the establishment or maintenance of such a fund a condition precedent to the existence of the corporation. Whatever may be the effect of the act of the corporation in making the investment of $12,000, under the terms of the ordinance, (and

that question is not necessarily nor properly involved in this case,) the *uninvested property* is untrammelled.

And if, in consideration of services without compensation, rendered for many years, the corporation, *by direct vote*, should give out to individual firemen, *as rewards*, specific sums for which it had no actual need, it is clear that they may parcel out its surplus means, or any part thereof, amongst the several fire companies, to be disposed of by such respective companies in payment of their liabilities, or in rewards to members, either by special appropriations, or by *per capita* distribution.

*C. J. M. Gwinn, R. C. Barry* and *Chas. H. Pitts,* for the appellees:

1st. The answer admits that two of the complainants *are* delegates from fire companies, connected with the Baltimore United Fire Department to that association of delegates, existing as a corporation under the style of the Baltimore United Fire Department, by virtue of the Act of 1833, ch. 187. These two delegates are, therefore, in fact and in law, corporators, under the very terms of this Act. Now assuming, for the moment, that the act contemplated by the Baltimore United Fire Department *was beyond the scope of their corporate powers,* can there be at this day any reasonable doubt as to the right of a corporator to restrain a corporation from so proceeding, by means of a bill filed for that purpose? The decision of Vice Chancellor Bruce in *Ward vs. Society of Attornies,* 1 *Collyer,* 381; of Lord Brougham, Chancellor, in *Ware vs. Grand Junction Water Works Company,* 2 *Russ. & Mylne,* 484; of *Cunliff vs. Manchester and Bolton R. R. Co.,* and *Maudsley vs. The same Company,* cited in the notes to *Ware vs. Grand Junction W. W. Co.,* are clear upon this point. For, not only will courts of equity interfere, where the public interests, and where the interests of strangers to the corporation are to be defended from injury, but also the powers of the court may be put in motion at the instance of a single shareholder, if he can show that the corporation are employing their statutory powers, funds, &c., for the accomplishment of purposes not within the sphere of

their institution. *Grant on Corp.*, 80 *Law Lib.*, 301. For "no body of corporators can be allowed to act inconsistently with the purposes of the corporation, or be allowed to do that which would place their successors in a different position from that in which the institution of the corporation intended them to stand." *Grant on Corp.*, 80 *Law Lib.*, 302, citing *Colman vs. Eastern Counties R. W. Co.;* see this case in 4 *Eng. Railway & Canal Cases*, 389. This view of the case, which regards the complainants as corporators, interested in the preservation of the exact limits of the charter, whether their interests as corporators be personal or as corporate representatives, is independent of the ground upon which the decision of the Circuit Court was placed in the opinion in this cause. But the court is referred also to that opinion, and to the positions therein taken, and the authorities therein cited, for the further support of the case of the appellees. It is believed by the appellees that the opinions in the case of *Gregg vs. Mayor & City Council of Baltimore*, 14 *Md. Rep.*, 505, 506, are in confirmation of the same doctrine.

2nd. The answer concedes that the appellant had no right to dispose of the $12,000 five *per cent.* city stock, created under the ordinance of April 15th, 1835. But it makes this concession only in deference to the fact, that this stock, by the terms of its creation, was not transferable. The answer asserts that, as to the other property of the fire department, a common law rule prevails, and that the appellant has the right to dispose of these assetts according to its pleasure, except where they are charged, as in the case of Mrs. Buckley, with a certain pension. The appellees certainly do not mean to contest the general common law power, which is incident to corporate bodies, to hold or dispose of property, when the charters of such corporate bodies do not, of necessity, forbid the exercise of this ordinary common law power. But the appellees have no difficulty in asserting, that it is a dangerous error to hold that this common law power of disposing of the property of the corporation, at the will of the corporate authority, may be exercised as freely by a corporation as by an individual owner. The appellees say, that where

the purposes of a corporation are exactly defined by its charter, there can be no acquisition, and no disposition made of property, which are inconsistent with the legislative will as expressed in the charter; and that the common law right of purchase and sale, possessed by a corporation, is qualified by this paramount principle. Chancellor Bland, in *Binney's Case, 2 Bland,* 142, presents this view with great clearness of language: "If property be given to a body politic for certain specified and limited purposes, any application of it on an obviously different object is a violation of the law; and, consequently, expenditures, not for corporate purposes, in whatever way they may have been authorised by the body politic, may be enjoined and prohibited." This ruling is but an amplification of the elementary principle laid down by the Supreme Court in the case of *Perrine vs. The Chesapeake & Delaware Canal Co.,* 9 *How.,* 184, and see *Grant on Corp.,* 80 *Law Lib.,* 15. Now for what certain and specified purposes was this corporation, by law, formed and enabled to acquire and hold property? The Act of 1833, ch. 187, sec. 2, says, that it shall have power, by subscription, periodical contribution, and other lawful means, to authorise and provide for the creation of a fund, and the investment of the same from time to time, in such manner as they shall deem most beneficial, safe and productive; the nett proceeds of which fund shall be applicable to the benevolent purposes of affording relief in certain cases to firemen and their families. This provision, in itself, would seem to have been full enough to have constrained the corporation to have applied the *remainder* of its nett revenue, left in the treasury of the corporation, after the payment of its discretionary benefactions, to the increase of the permanent fund thus dedicated. It was indeed fully mandatory on this point. And the supplemental statute of 1839, ch. 265, which authorised the investment of these surplus proceeds in Baltimore city and other public securities, must be taken to be rather a limitation upon the class of securities to be selected for the fund, than as any new grant of power. When this fund of the corporation was received for the purposes of the charter, and invested as a

fund for the purposes of the charter, there was no power in the corporation to deal with it otherwise than as the charter directed. And even if under such a charter as that which we are considering, a power existed to change the investment of any part of this fund, and for that reason to order a sale for the purpose of the new investment, such corporate power of sale must be exercised in a manner consistent with the trusts of the charter. And, therefore, a sale ordered by a corporation, *for a purpose inconsistent with its charter*, is a sale which a court of equity ought to restrain. For, as the validity of a sale depends upon the consent of the corporate body, and as this consent is properly supposed to rest upon the expressed motive and purpose of the sale, equity will not permit a sale to be perfected which was manifestly resolved upon by the corporation, under a mistaken theory of its powers of appropriating the proceeds of such a sale. It is in this view of the case that the court is asked to consider the *fiduciary* relation of the fire department, upon which the decision of the circuit court was grounded. The appellees certainly cannot see the force of the argument, based upon the change made in the fire department of Baltimore, by the ordinances of the city introducing a different system. The fire companies, which were represented in the United Fire Department—and the United Fire Department itself—were all *corporations*, and the laws, limiting their powers, are not in any respect changed or altered by the ordinances of the city of Baltimore. The answer does not allege that the several incorporated fire companies, or the United Fire Department, have ceased to exist, either by judgment on a *scire facias*, or by such reduction of their several numbers by accident or negligence, as amounts in law to their civil death. On the contrary, the answer asserts in the clearest manner, the vitality of all these corporations, so that we are not left even to consider the proper distribution of this fund, if the several corporations were all dissolved. For, could there be a clearer recognition of the vitality of these corporations, than a resolution, which recognises the United Fire Department as the continuing trustee of one fund, and as the active distributor

of another, and which recognises the members of the incorporated and subsisting fire companies as living, active, present recipients of the corporate munificence. These several corporations are not dissolved, as the record shows; and the Baltimore United Fire Department must, therefore, continue to hold its invested funds in trust for the purposes for which these funds were obtained. All that can be said by the operation of the city ordinance regulating a new fire department, is, that it prevents the happening of cases which would be a charge upon the revenue of the corporation, so long as it is in force. But if that ordinance were repealed, the former system would, so far as the Legislature of the State is concerned, at once revive, and the increasing funds of the United Fire Department would be restored to activity.

If these several corporations—if the United Fire Department—desire to abandon their corporate existence, and to give some other destination to the fund, than that which the law has given, they must take the ordinary and legal means of abandoning their charter, or must seek for some enabling statute from the Legislature.

GOLDSBOROUGH, J., delivered the opinion of this court.

The appellants were incorporated under the Act of 1833, ch. 187, with power to obtain a fund, by subscription, periodical contribution, or other lawful means, and make investment of the same; the nett proceeds thus entrusted to the corporation, to be applicable to the purposes mentioned in said Act.

Subsequent to their incorporation, and after an investment of $12,000, the interest from the investment, and from other sources, created an excess beyond the demands contemplated by the Act of incorporation, and the Act of 1839, ch. 265, was passed, by the first section of which power was granted "to invest permanently, from time to time, in Baltimore city or other public securities, such part of the nett proceeds arising annually from the Baltimore city stock, or any other resources held by said institution, as may not be required for the relief of disabled firemen."

33    v.17

The appellants, acting under their interpretation of the Act of 1839, on the 23rd day of October 1860, passed the resolution mentioned in the proceedings in this cause. The appellees, two of them being delegates and forming part of the executive board, and the other a member of one of the fire companies in connection with the United Fire Department, protested against the resolution, but finding their protest unavailing, filed their bill of complaint in the circuit court for Baltimore city, praying an injunction to restrain the appellants, their officers and agents, from carrying into effect the resolution of the board of delegates. The injunction was granted, and upon the coming in of the answer of the appellants, motion was made to dissolve the injunction. The court overruled the motion, and, by its order, made the injunction perpetual. The appellants appealed to this court, not only upon the granting of the injunction, but also from the order refusing to dissolve the same.

We deem it proper, in the first place, to dispose of the question raised by the appellants, that the complainants have no right to interfere with the action of the United Fire Department, in carrying into effect the resolution passed to sell, dispose of, and distribute the funds mentioned in that resolution.

We do not concur in this view, but regard the appellees as having a proper standing in a court of equity, not only for the reasons and under the authorities cited by the learned judge, in his opinion in this case, but also because the appellees, as corporators and members of fire companies in immediate connection with the appellants, are directly or remotely interested in the "permanent investment" and preservation of the fund, according to the intent and purpose of the Act of 1833, ch. 187, and the Act of 1839, ch. 265; and the resolution of the appellants would be in derogation of their rights.

Forasmuch as the appellants, by their resolution, did not design to disturb the investment of the $12,000, invested in five per cent. stock of the city of Baltimore, made irredeemable and not transferable, under the provisions of an ordi-

Baltimore United Fire Department *vs.* Creamer, *et al.*

nance of the city of Baltimore, but only the amount of other investments and "available" funds in hand, and upon which there was no present demand, we can see no legal restriction upon the right of the appellants to sell, transfer or alter the investment of this surplus fund, available in their hands, beyond the $12,000. And to that extent we regard the action of the court below as wrong.

But we approve of the injunction granted, so far as it restrains the appellants from *distributing* this fund in accordance with the terms of their resolution.

The appellants were created a corporation for specified purposes, which they cannot infringe, whatever may be their altered condition, so long as they are in actual, legal existence. The several fire companies in connection with the appellants, are recognized by their resolution as having full, legal existence, and though it is alleged, in the answer of the appellants, that, owing to the substitution of a paid fire department, constituted by an ordinance of the city of Baltimore, no further demand will be made upon the funds sought to be affected by the aforesaid resolution, yet, so long as the appellants and the fire companies retain their chartered rights, the appellants, as trustees of these funds, must confine their action upon them strictly within the purview of the Act of incorporation, and the supplement thereto. And, under existing circumstances, if they desire to effect any division of them, they must attain their purpose by some enabling statute.

Without affirming or reversing the orders of the circuit court, this cause will be remanded for further proceedings, under the Act of 1832, ch. 302, that the court may amend and modify its orders, in conformity with the views expressed by this court.

*Cause remanded for further proceedings.*